UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SHERRI L. DEEM, individually and as Personal Representative of the estate of THOMAS A. DEEM, deceased,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, et al.,<br><br>　　　　　　　　　Defendants. | CASE NO. C17-5965 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, MOTION FOR EXTENSION OF TIME, AND MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING |

　　This matter comes before the Court on Plaintiff Sherri Deem's, individually and as Personal Representative of the Estate of Thomas Deem ("Deem") motion for partial summary judgment on Defendant Cleaver-Brooks, Inc.'s ("Cleaver-Brooks") affirmative defenses, Dkt. 239; Cleaver-Brooks's motion for summary judgment on Deem's maritime law claims, Dkt. 254; Deem's motion for extension of time to respond to dispositive motions, Dkt. 274; and Deem's motion for leave to file supplemental briefing re maritime law, Dkt. 377. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

# I. PROCEDURAL HISTORY

On November 20, 2017, Deem filed a complaint against Defendants Air & Liquid Systems Corporation, CBS Corporation, Crane Co., Foster-Wheeler Energy Corporation, General Electric Company, IMO Industries, Inc., and Warren Pumps, LLC. Dkt. 1 ("*Deem 1*").

On June 28, 2018, Deem filed a second complaint against Defendants Anchor/Darling Valve Company, BW/IP, Inc., Blackmer Pump Company, Clark-Reliance Corporation, Cleaver-Brooks, Crosby Valve, LLC, Flowserve Corporation, Flowserve US, Inc., FMC Corporation ("FMC"), Gardner Denver, Inc., Goulds Pumps, Inc., Grinnell, LLC, Hopeman Brothers, Inc., ITT, LLC, Ingersoll-Rand Company, Jerguson Gage & Valve, John Crane, Inc., McNally Industries, LLC ("McNalley"), Velan Valve Corp., Viad Corp., Viking Pump, Inc., Weir Valves & Controls USA, Inc., and The WM Powell Company. C18-5527-BHS, Dkt. 1 ("*Deem 2*").

On December 13, 2018, the Court granted in part and denied in part Deem's motion to consolidate the cases. Dkt. 52. The Court consolidated the cases through "disposition of summary judgment or such other time prior to trial as the Court deems appropriate" and denied the motion as to the request to consolidate them for trial. *Id.* at 2.

On April 25, 2019, the Court granted FMC and McNalley's motion for summary judgment concluding that Deem's claim for wrongful death under Washington law was barred by the statute of limitations. Dkt. 105. That same day, Clever-Brooks filed a

motion for summary judgment on the same issue. Dkt. 106. On June 10, 2019, the Court granted Clever-Brooks's motion. Dkt. 185.

On July 11, 2019, Deem filed a motion for partial summary judgment on some of Clever-Brooks's affirmative defenses, Dkt. 239, and Clever-Brooks filed a motion for summary judgment on Deem's maritime law claims, Dkt. 254. On July 24, 2019, Deem filed a motion for extension of time to respond to Clever-Brooks's motion. Dkt. 274. On July 29, 2019, the parties responded to the dispositive motions. Dkts. 289, 297. On August 2, 2019, Clever-Brooks replied. Dkt. 328.

On August 6, 2019, the Court granted Deem's motion to apply maritime law and granted Deem leave to file an amended complaint to clarify her claims. Dkt. 331. On August 16, 2019, Deem filed amended complaints in both cases. *Deem 1*, Dkt. 341; *Deem 2*, Dkt. 92. On August 19, 2019, the Court struck the amended complaint in *Deem 1* because only *Deem 2* defendants moved to dismiss her complaint. Dkt. 341.

On August 30, 2019, Deem filed a motion for leave to file supplemental briefing re maritime law. Dkt. 377. On September 16, 2019, Clever-Brooks responded. Dkt. 393. Deem did not reply.

## II. FACTUAL BACKGROUND[1]

**A.  Deem's Witnesses**

Thomas Deem ("Mr. Deem") worked at Puget Sound Naval Shipyard ("PSNS") from February 7, 1974 until February 22, 1981. He began as an apprentice marine

---

[1] The facts in this case are undisputed.

machinist in the outside machine shop (Shop 38). In February 1978, he completed the apprentice program and was promoted to machinist in Shop 38. He continued as a marine machinist at PSNS until February 22, 1981, when he was transferred to the U.S. Navy's Trident Refit Facility in Bremerton, Washington.

Deem submitted the testimony of Mr. Deem's coworkers, David Wingo, Jr. ("Wingo") and Lawrence Foster ("Foster"). Wingo first met Mr. Deem when he started his Marine Machinist apprenticeship at the PSNS in July of 1974. Mr. Deem was six months ahead of Wingo, but Wingo worked in the same areas as Mr. Deem throughout the apprentice program. The apprentice program lasted four years. Two years of the apprentice program was spent in the shop "which covered all the machine sections, plus we had a bench section where we rebuilt pumps and valves." Dkt. 298-1 at 44. The other two years were spent performing hands-on training aboard ships and submarines during overhauls. Both Wingo and Mr. Deem continued to work as Marine Machinists aboard ships after graduating from the apprentice program.

Wingo explained that a Marine Machinist "does everything that has to do with making ships or submarines go through the water." *Id*. at 43. Machinists were typically assigned to engine rooms, boiler rooms, and auxiliary spaces performing maintenance on valves, pumps, catapults, distilling plants, turbines, compressors, and steam traps. Some of the ships Wingo recalled working aboard with Mr. Deem at PSNS include: USS Kitty Hawk, USS Constellation, USS Truxton, USS Bainbridge, and USS Enterprise.

Similarly, Foster worked for the Navy with Mr. Deem. Foster began working at PSNS in 1973 as a sheet metal shop helper and entered the Marine Machinist apprentice

program soon after. Foster was in the same apprentice class with Mr. Deem and worked with Mr. Deem "maybe every other month or so during the apprenticeship." Foster asserted that approximately half the machinists' time was spent working with Shop 38 on ships, and half was spent working with Shop 31 in the shop. Foster and Mr. Deem worked exclusively out of Shop 38 and continued working on the same crew once they completed the apprentice program in 1977.

Foster explained that Marine Machinists are responsible for removing and repairing mechanical equipment on-board ships, including valves, pumps, air compressors, and turbines. They were typically assigned to the machinery spaces, "where the power of the ship comes from, where the turbines are at, generators and the main equipment for propulsion." Dkt. 298-1 at 124. The machinery spaces were full of dust from all the various trades working on the different equipment. Some of the ships Foster recalled working aboard with Mr. Deem include: USS Kitty Hawk, USS Constellation, USS Bainbridge, USS Truxton, and USS Enterprise.

Distilling plants, or evaporators, make fresh water out of salt water on board ships. Machinists pulled the covers off distilling plants, repaired or replaced valves, and descaled the distilling plants. The distilling plants at PSNS were insulated because of condensation issues. Although Wingo was never present when the insulation was removed from distilling plants, the insulators never got all the insulation off. The machinist then had to disturb some of the remaining insulation residue, which created visible dust they breathed.

Machinists also had to remove old flange gaskets from the distilling plants using a scraper and wire brush. Removing old gaskets created visible dust in the air that the machinists breathed. Once the old gasket material was off, machinists manufactured new gaskets. Cutting the new gasket material created "light dust flying, you know, coming off from it." Dkt. 298-1 at 48. Wingo recalled working on distilling plants manufactured by Cleaver-Brooks. He declared that Mr. Deem performed similar maintenance on distilling plants because "[t]hat was part of our trade. Plus it was also part of the apprenticeship program, too." *Id.* at 58. Wingo, however, could not recall any particular brand of equipment that he and Mr. Deem worked on together. *Id.* at 70–71.

**B.     Deem's Experts**

Captain Arnold Moore is an expert in maintenance practices and conditions aboard Navy ships, as well as work practices in naval shipyards. Captain Moore analyzed the list of ships that Mr. Deem worked on while at PSNS and, based on ship records, confirmed that equipment manufactured by Cleaver-Brooks was aboard many of those ships, including the USS Kitty Hawk and USS Enterprise. He opined that "[i]t is likely these plants utilized compressed asbestos gaskets to seal access opening covers and to seal flanges for low pressure steam piping attached to these units." Dkt. 298-1 at 27. He also opined that "Mr. Deem worked in spaces where other workers were removing asbestos insulation from 1974 until 1978. [Mr. Deem] likely worked in spaces where he and other workers were removing and replacing asbestos packing and gaskets for the entire time he worked as a machinist from 1974 through February 1981." *Id.* at 8. Even

though Captain Moore gave this opinion, he conceded that the opinion was based on Wingo and Foster's testimony. Dkt. 255-1 at 50.

Deem retained Dr. Edwin Holstein as a medical expert. Dr. Holstein reviewed Wingo and Foster's testimony and Captain Moore's report. Based on that evidence, Dr. Holstein opines that "Mr. Deem experienced innumerable exposures to asbestos, which cumulatively constituted the direct and sole cause of his malignant mesothelioma." Dkt. 298-1 at 198.

### III.  DISCUSSION

**A.  Deem's Non-Dispositive Motions**

Deem moves the Court for an extension of time to respond to numerous motions for summary judgment, including Clever-Brooks's motion, Dkt. 274, and for leave to file supplemental briefing re maritime law, Dkt. 377. First, the Court denies the motion for an extension of time as to Clever-Brooks because Deem filed a timely response. *See* Dkt. 297.

Second, Clever-Brooks specifically informed Deem that it was moving for summary judgment on any possible maritime claim in Deem's complaint even though Deem's motion to apply maritime law was pending before the Court. Dkt. 254 at 1, n.1. Although most of the relevant dispositive motions were unclear on the issue of causation under maritime law or Washington law, Clever-Brooks's motion was explicitly clear that it was brought under maritime law because the Court has dismissed Deem's claims against it under Washington law as barred by the statute of limitations. Moreover, Deem

specifically responded to Clever-Brooks's arguments under maritime law. *See* Dkt. 297. Therefore, the Court denies Deem's motion for leave as to Clever-Brooks.

**B.      Summary Judgment**

   **1.      Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

### 2. Clever-Brooks's Motion

The parties dispute the standard for causation and the application of the proper standard to the facts of this case.

#### a. Causation Standard

Under maritime law, Deem must show that Mr. Deem "was actually exposed to asbestos-containing materials that [were] installed by [Clever-Brooks] and that such exposure was a substantial contributing factor in causing his injuries." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1174 (9th Cir. 2016) (citing *Lindstrom v. A–C Prod. Liab. Tr.*, 424 F.3d 488, 492 (6th Cir. 2005)). "Absent direct evidence of causation, a party may satisfy the substantial-factor test by demonstrating that the injured person had substantial exposure to the relevant asbestos for a substantial period of time." *Id.* (citing *Lindstrom*, 424 F.3d at 492); *see also Menne v. Celotex Corp.*, 861 F.2d 1453, 1462 (10th Cir. 1988) ("More significant under traditional causation tests than the question of mere exposure to [asbestos-containing] products is whether the exposure was

sufficiently sustained (or frequent) and intense to constitute a proximate cause of [the plaintiff's] mesothelioma."). "Evidence of only minimal exposure to asbestos is insufficient; there must be 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *McIndoe*, 817 F.3d at 1176 (quoting *Lindstrom*, 424 F.3d at 492).

Although this is well-settled law, Deem contends that this is an improper "heightened" standard by misrepresenting certain authorities and citing state authorities addressing the issue of causation. First, Deem contends that the "gravamen of *McIndoe*, of which [Clever-Brooks] does not inform this Court, is simply that it rejected the 'every exposure' theory." Dkt. 297 at 10. While it is true that *McIndoe* rejected the theory that every exposure to asbestos above a threshold level must be a substantial factor in the alleged injury, the court did so under the maritime causation standard. 817 F.3d at 1176–78. In other words, the *McIndoe* court first set forth the applicable standard, and then it rejected the plaintiffs' evidence under that standard. Therefore, the Court considers *McIndoe* binding precedent on (1) the applicable causation standard and (2) whether an expert opinion based on the "every exposure" theory is sufficient to meet that standard.

Next, Deem argues that the "requirement to prove a substantial factor exposure in Washington is not onerous." Dkt. 297 at 10. Deem's counsel are well aware that the standard under maritime law is different from the standard under Washington law because they filed a contemporaneous motion in a related case faulting the Court for failing to recognize this distinction. *See Yaw v. Air & Liquid Sys. Corp.*, C18-5405 BHS, Dkt. 266 at 6 ("the Court did not distinguish whether it was ruling under state or maritime

law, a critical distinction given the differing causation standards."). Regardless of this potential misrepresentation, the Court need not provide much discussion to reject Deem's reliance on Washington authorities because those authorities are irrelevant to Deem's claims under maritime law.

Deem also argues that she may rely on direct or circumstantial evidence to establish causation. Dkt. 297 at 11–12. The Court agrees, but it rejects Deem's cites to *In re Hawaii Fed. Asbestos Cases*, 734 F. Supp. 1563, 1572 (D. Haw. 1990) and *Morgan v. Aurora Pump Co.*, 159 Wn. App. 724, 729 (2011) because those decisions relied on Hawaii law and Washington law, respectively. Instead, under maritime law, if Deem relies on circumstantial evidence to establish causation, she "may satisfy the substantial-factor test by demonstrating that the injured person had substantial exposure to the relevant asbestos for a substantial period of time." *McIndoe*, 817 F.3d at 1174 (citing *Lindstrom*, 424 F.3d at 492).

With the proper standard set forth herein, the Court will turn to the evidence that Deem has submitted.

### b. Evidence

In this case, Deem fails to meet her burden. Deem has no direct evidence of Mr. Deem's exposure to a Clever-Brooks product let alone a Clever-Brooks product that contained asbestos. Thus, she must rely on circumstantial evidence. At most, Wingo and Foster place Mr. Deem aboard the USS Kitty Hawk and USS Enterprise during the period that they worked with Mr. Deem and declare that machinists sometimes worked on distillers that could have contained asbestos. Such evidence is insufficient to establish

"substantial exposure to the relevant asbestos for a substantial period of time." *McIndoe*, 817 F.3d at 1174 (citing *Lindstrom*, 424 F.3d at 492). In fact, Deem's fact witnesses fail to establish that Clever-Brooks's products were present at Mr. Deem's workplace, which even falls short of what other courts have found to be insufficient evidence. *See, e.g.*, *Lindstrom*, 424 F.3d at 492 ("a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient."). Therefore, the Court concludes that Deem has failed submit sufficient factual evidence to create material questions of fact.

Although this should end the inquiry, Deem attempts to establish her factual requirements with the testimony of her experts. For example, Captain Moore contends that "Mr. Deem worked in spaces where other workers were removing asbestos insulation from 1974 until 1978. [Mr. Deem] likely worked in spaces where he and other workers were removing and replacing asbestos packing and gaskets for the entire time he worked as a machinist from 1974 through February 1981." Dkt. 298-1 at 8. Even if this were true, which Deem fails to establish with actual facts, Captain Moore fails to show that these employees were removing and replacing packing and gaskets in Clever-Brooks's products. Thus, Captain Moore's opinion can be easily rejected for numerous reasons.

That leaves Dr. Holstein's opinion that "Mr. Deem experienced innumerable exposures to asbestos, which cumulatively constituted the direct and sole cause of his malignant mesothelioma." Dkt. 298-1 at 198. Again, this may well be true, but it is ultimately only speculation to assert that the innumerable exposures were from Clever-

Brooks's products. This opinion may be easily rejected as well. Therefore, the Court grants Clever-Brooks's motion and dismisses Deem's claims.

### 3. Deem's Motion

Having granted Clever-Brooks's motion and dismissing all of Deem's claims against Clever-Brooks, the Court denies Deem's motion for partial summary judgment on Cleaver-Brooks's affirmative defenses as moot. Dkt. 239.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Deem' motion for partial summary judgment on Cleaver-Brooks affirmative defenses, Dkt. 239, Deem's motion for extension of time to respond to dispositive motions, Dkt. 274, and Deem's motion for leave to file supplemental briefing re maritime law, Dkt. 377, are **DENIED** and Cleaver-Brooks's motion for summary judgment of Deem's maritime law claims, Dkt. 254, is **GRANTED**.

The Clerk shall terminate Cleaver-Brooks.

Dated this 22nd day of November, 2019.

BENJAMIN H. SETTLE
United States District Judge