UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SHERRI L. DEEM, individually and as Personal Representative of the estate of THOMAS A. DEEM, deceased,<br><br>                 Plaintiff,<br><br>   v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, et al.,<br><br>                 Defendants. | CASE NO. C17-5965 BHS<br><br>ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on Defendants Foster-Wheeler Energy Corporation ("Foster-Wheeler"), Warren Pumps, LLCs ("Warren Pumps"), and Air & Liquid Systems Corporation's ("ALSC") motions for summary judgment on Deem's maritime law claims, Dkts. 63, 232, 261, and Plaintiff Sherri Deem's, individually and as Personal Representative of the Estate of Thomas Deem ("Deem") motions for partial summary judgment on ALSC and Foster-Wheeler's affirmative defenses, Dkts. 235, 241. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants Defendants' motions and denies Deem's motions as moot for the reasons set forth herein.

# I. PROCEDURAL HISTORY

On November 20, 2017, Deem filed a complaint against Defendants ALSC, CBS Corporation, Crane Co., Foster-Wheeler, General Electric Company, IMO Industries, Inc., and Warren Pumps. Dkt. 1.

On February 7, 2019, Foster-Wheeler filed a motion for summary judgment. Dkt. 63. On April 18, 2019, the Court requested supplemental briefing and renoted the motion. Dkt. 102.

On July 11, 2019, Warren Pumps and ALSC filed motions for summary judgment, Dkt. 232, 261, and Deem filed motions for partial summary judgment on ALSC and Foster-Wheeler's affirmative defenses, Dkts. 235, 241. On July 29, 2019, the parties responded. Dkts. 281, 291, 307. On August 2, 2019, Warren Pumps and ALSC replied. Dkts. 322, 324.

On August 6, 2019, the Court granted Deem's motion to apply maritime law. Dkt. 331.

On August 30, 2019, Deem filed a motion for leave to file supplemental briefing re maritime law. Dkt. 377. On September 16, 2019, ALSC and Warren Pumps responded. Dkts. 389, 390. Deem did not reply.

On January 9, 2020, the Court granted Deem's motion for leave to file supplemental briefing. Dkt. 430. On January 17, 2020, Deem filed supplemental responses. Dkts. 439, 440, 441. On January 22, 2020, ALSC, Foster-Wheeler, and Warren Pumps replied. Dkts. 450, 451, 454.

## II. FACTUAL BACKGROUND[1]

**A.   Deem's Witnesses**

Thomas Deem ("Mr. Deem") worked at Puget Sound Naval Shipyard ("PSNS") from February 7, 1974 until February 22, 1981. He began as an apprentice marine machinist in the outside machine shop (Shop 38). In February 1978, he completed the apprentice program and was promoted to machinist in Shop 38. He continued as a marine machinist at PSNS until February 22, 1981, when he was transferred to the U.S. Navy's Trident Refit Facility in Bremerton, Washington.

Deem submitted the testimony of Mr. Deem's coworkers, David Wingo, Jr. ("Wingo") and Lawrence Foster ("Foster"). Wingo first met Mr. Deem when he started his Marine Machinist apprenticeship at the PSNS in July of 1974. Mr. Deem was six months ahead of Wingo, but Wingo worked in the same areas as Mr. Deem throughout the apprentice program. The apprentice program lasted four years. Two years of the apprentice program were spent in the shop "which covered all the machine sections, plus we had a bench section where we rebuilt pumps and valves." Dkt. 298-1 at 44. The other two years were spent performing hands-on training aboard ships and submarines during overhauls. Both Wingo and Mr. Deem continued to work as Marine Machinists aboard ships after graduating from the apprentice program.

Wingo explained that a Marine Machinist "does everything that has to do with making ships or submarines go through the water." *Id.* at 43. Machinists were typically

---
[1] The facts in this case are undisputed.

assigned to engine rooms, boiler rooms, and auxiliary spaces performing maintenance on valves, pumps, catapults, distilling plants, turbines, compressors, and steam traps. Some of the ships Wingo recalled working aboard with Mr. Deem at PSNS include: USS Kitty Hawk, USS Constellation, USS Truxton, USS Bainbridge, and USS Enterprise.

Similarly, Foster worked for the Navy with Mr. Deem. Foster began working at PSNS in 1973 as a sheet metal shop helper and entered the Marine Machinist apprentice program soon after. Foster was in the same apprentice class as Mr. Deem and worked with Mr. Deem "maybe every other month or so during the apprenticeship." Foster asserted that approximately half the machinists' time was spent working with Shop 38 on ships, and half was spent working with Shop 31 in the shop. Foster and Mr. Deem worked exclusively out of Shop 38 and continued working on the same crew once they completed the apprentice program in 1977.

Foster explained that Marine Machinists are responsible for removing and repairing mechanical equipment on board ships, including valves, pumps, air compressors, and turbines. They were typically assigned to the machinery spaces, "where the power of the ship comes from, where the turbines are at, generators and the main equipment for propulsion." Dkt. 298-1 at 124. The machinery spaces were full of dust from all the various trades working on the different equipment. Some of the ships Foster recalled working aboard with Mr. Deem include: USS Kitty Hawk, USS Constellation, USS Bainbridge, USS Truxton, and USS Enterprise.

Distilling plants, or evaporators, make fresh water out of salt water on board ships. Machinists pulled the covers off distilling plants, repaired or replaced valves, and

descaled the distilling plants. The distilling plants at PSNS were insulated because of condensation issues. Although Wingo was never present when the insulation was removed from distilling plants, the insulators never got all the insulation off. The machinist then had to disturb some of the remaining insulation residue, which created visible dust they breathed.

Machinists also had to remove old flange gaskets from the distilling plants using a scraper and wire brush. Removing old gaskets created visible dust in the air that the machinists breathed. Once the old gasket material was off, machinists manufactured new gaskets. Cutting the new gasket material created "light dust flying, you know, coming off from it." Dkt. 298-1 at 48. Wingo recalled working on pumps manufactured by ALSC's predecessor, Buffalo Pumps, boilers manufactured by Foster-Wheeler, and distilling plants manufactured by Warren Pumps. He declared that Mr. Deem performed similar maintenance on distilling plants because "[t]hat was part of our trade. Plus it was also part of the apprenticeship program, too." *Id.* at 58. Wingo, however, could not recall any particular brand of equipment that he and Mr. Deem worked on together. *Id.* at 70–71.

**B.     Deem's Experts**

Captain Arnold Moore is an expert in maintenance practices and conditions aboard Navy ships, as well as work practices in Naval shipyards. Captain Moore analyzed the list of ships that Mr. Deem worked on while at PSNS and, based on ship records, confirmed that equipment manufactured by ALSC, Foster-Wheeler, and Warren Pumps was aboard many of those ships. He opined that "[i]t is likely these plants utilized

compressed asbestos gaskets to seal access opening covers and to seal flanges for low pressure steam piping attached to these units." Dkt. 298-1 at 27. He also opined that "Mr. Deem worked in spaces where other workers were removing asbestos insulation from 1974 until 1978. [Mr. Deem] likely worked in spaces where he and other workers were removing and replacing asbestos packing and gaskets for the entire time he worked as a machinist from 1974 through February 1981." *Id.* at 8. Even though Captain Moore gave this opinion, he conceded that the opinion was based on Wingo and Foster's testimony. Dkt. 255-1 at 50.

Deem retained Dr. Edwin Holstein as a medical expert. Dr. Holstein reviewed Wingo and Foster's testimony and Captain Moore's report. Based on that evidence, Dr. Holstein opines that "Mr. Deem experienced innumerable exposures to asbestos, which cumulatively constituted the direct and sole cause of his malignant mesothelioma." Dkt. 298-1 at 198.

### III. DISCUSSION

ALSC, Foster-Wheeler, and Warren Pumps move for summary judgment on Deem's claims arguing that Deem has failed to submit sufficient evidence to create a material question of fact regarding causation.

**A.  Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party

fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

## B. Defendants' Motions

Under maritime law, Deem must show that Mr. Deem "was actually exposed to asbestos-containing materials that [were] installed by [a defendant] and that such exposure was a substantial contributing factor in causing his injuries." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1174 (9th Cir. 2016) (citing *Lindstrom v. A–C Prod. Liab. Tr.*, 424 F.3d 488, 492 (6th Cir. 2005)). "Absent direct evidence of causation, a party may satisfy the substantial-factor test by demonstrating that the injured person had substantial exposure to the relevant asbestos for a substantial period of time." *Id.* (citing *Lindstrom*, 424 F.3d at 492); *see also Menne v. Celotex Corp.*, 861 F.2d 1453, 1462 (10th Cir. 1988) ("More significant under traditional causation tests than the question of mere exposure to [asbestos-containing] products is whether the exposure was sufficiently sustained (or frequent) and intense to constitute a proximate cause of [the plaintiff's] mesothelioma."). "Evidence of only minimal exposure to asbestos is insufficient; there must be 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *McIndoe*, 817 F.3d at 1176 (quoting *Lindstrom*, 424 F.3d at 492).

In this case, the Court agrees with ALSC, Foster-Wheeler, and Warren Pumps that Deem fails to meet her burden. Deem has no direct evidence of Mr. Deem's exposure to products from these companies let alone a product that contained asbestos. Thus, she must rely on circumstantial evidence. At most, Wingo and Foster place Mr. Deem aboard ships during the period that they worked with Mr. Deem and declare that machinists sometimes worked on specific products that could have contained asbestos.

Such evidence is insufficient to establish "substantial exposure to the relevant asbestos for a substantial period of time." *McIndoe*, 817 F.3d at 1174 (citing *Lindstrom*, 424 F.3d at 492). Therefore, the Court concludes that Deem has failed submit sufficient factual evidence to create material questions of fact.

Although this should end the inquiry, Deem attempts to establish her factual requirements with the testimony of her experts. The Court, however, has previously rejected Captain Moore and Dr. Holstien's opinions because they rely on speculation instead of facts. *See* Dkt. 408. The Court similarly rejects their opinions as they pertain to ALSC, Foster-Wheeler, and Warren Pumps because the opinions are based on speculation. Therefore, the Court grants ALSC, Foster-Wheeler, and Warren Pumps's motions for summary judgment on Deem's claims.

**C.     Deem's Motion**

Having granted ALSC and Foster-Wheeler's motions and dismissing all of Deem's claims against these defendants, the Court denies Deem's motions for partial summary judgment on ALSC and Foster-Wheeler's affirmative defenses as moot. Dkts. 235, 241.

**D.     Remaining Parties**

It appears that General Electric and CBS Corporation are the only remaining defendants, but both parties have submitted notices that they will be filing stipulated motions to dismiss. Dkts. 386, 434. As of the date of this motion, neither party has submitted such a motion. Therefore, the Court requests a joint status report on whether they still intend to file such a stipulated motion and whether the pretrial conference may

be stricken. The parties are informed that two matters are set for trial on February 11, 2020 and that the other case has priority. Thus, even if the parties intend to proceed to trial, the trial would be more than likely moved to another date.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Foster-Wheeler, Warren Pumps, and ALSC motions for summary judgment on Deem's maritime law claims, Dkts. 63, 232, 261, are **GRANTED** and Deem's motions for partial summary judgment on ALSC and Foster-Wheeler's affirmative defenses, Dkts. 235, 241 are **DENIED as moot**.

The Clerk shall terminate Foster-Wheeler, Warren Pumps, and ALSC.

The remaining parties shall file a joint status report no later than January 28, 2020.

Dated this 24th day of January, 2020.

BENJAMIN H. SETTLE
United States District Judge