UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SHERRI L. DEEM, | CASE NO. C17-5965 BHS |
| Plaintiff, | ORDER |
| v. | |
| AIR & LIQUID SYSTEMS CORPORATION, et al., | |
| Defendants. | |

THIS MATTER is before the Court on a series of renewed motions, which the parties informed the Court were again ripe for consideration following the Ninth Circuit's Opinion remanding the case, Dkt. 477. The case arises from the death of Thomas Deem, shortly after he was diagnosed with mesothelioma, a lung disease caused by asbestos exposure. Deem[1] worked as a machinist at the Puget Sound Naval Shipyard ("PSNS") between 1974 and 1981, where he alleges he was exposed to asbestos manufactured by the defendants.

---

[1] The Plaintiff is Sherri Deem, Thomas Deem's widow, and the personal representative of his estate. This Order uses the singular, masculine "Deem" for clarity and ease of reference.

1       This Court dismissed Plaintiff Deem's maritime wrongful death claims against a

2   (large) subset of defendants, concluding they were time-barred. *See* Dkts. 415, 416, and

3   429. Deem appealed. Dkt. 459. Deem's claims against General Electric and CBS were

4   dismissed by stipulation. Dkts. 458 and 465.

5       The Court also dismissed on summary judgment Deem's claims against

6   Defendants Cleaver-Brooks, Dkt. 408, and Foster-Wheeler, Warren Pumps, and Air &

7   Liquid Systems, Dkt. 455. It determined that Deem had not met his burden of

8   demonstrating facts from which a reasonable jury could find his mesothelioma was

9   caused by exposure to those Defendants' products.

10       The Ninth Circuit's Opinion, Dkt. 477, reversed this Court's dismissal of Deem's

11   claims as time-barred. It held that Deem's admiralty law wrongful death claim accrued at

12   his death, and not before:

> We reverse and remand to the district court for its reconsideration of Sherri Deem's claims in light of our holding that the **statute of limitations for her claim began to accrue on the date of Thomas Deem's alleged wrongful death, and not before that death.** We do not reach issues of causation, that is, whether products containing asbestos were a substantial cause of decedent's death, which should be considered on remand by the district court in the first instance. Nor do we decide the scope of any wrongful death action to which Sherri Deem may be entitled.

*Id.* at 21 (emphasis added). It remanded the case to this Court.

    There are three remaining Defendants: John Crane, Inc. ("JCI");[2] Crosby Valve,

LLC ("Crosby"); and the William Powell Company ("Powell"). Each defendant (and

Deem) had motions pending that were mooted by the Court's dismissal of Deem's claims

---

[2] John Crane, Inc. is unrelated to Crane Valve, LLC, which was formerly a defendant.

based on the limitations period. After the Ninth Circuit's remand, the Court sought the

parties' input on which already-filed motions should be re-noted for the Court's

consideration in light of that Opinion. Dkt. 480. Consistent with the parties' responsive

Joint Status Report, Dkt. 484, the currently pending motions are:

• Defendant JCI's Motion for Summary Judgment on Causation, Dkt. 72, arguing

there is no evidence Deem inhaled asbestos manufactured by JCI or that JCI's asbestos

caused his disease;

• JCI's Second Motion for Summary Judgment on Causation, Dkt. 263, filed

provisionally, in case the Court agreed with Deem that maritime law (including maritime

law on causation) applied to the case. The Court has since so ruled, Dkt. 331, and the

Ninth Circuit's Opinion, Dkt. 477, confirmed the application of maritime law.

• JCI's Motion to Dismiss, Dkt. 372, arguing that Deem does not have a survival

action or a claim for non-pecuniary damages under maritime law. JCI's pre-appeal

motion also asks the Court to determine that it has no maritime jurisdiction over the case.

The Ninth Circuit's Opinion implicitly rejected this latter argument, and JCI's motion to

dismiss based on it is **DENIED**.

• Defendant Crosby's Motion for Summary Judgment on Causation, Dkt. 153,

arguing that there is no evidence that any Crosby product caused Deem's mesothelioma.

• Crosby's Motion to Dismiss based on the maritime law limitations period, Dkt.

371. Crosby argues Deem's claim accrued when he learned he had mesothelioma, and not

when he died from that disease. Powell joins this motion. Dkt. 374. Crosby and Powell's

renewed motions on this point are unnecessary. The Ninth Circuit's binding Opinion

plainly held that, in admiralty law, a wrongful death claim accrues at death, and not before. Dkt. 477. The Defendants' motions to dismiss on this basis, Dkts. 371 and 374, are **DENIED.**

• Defendant Powell's Motion for Summary Judgment, Dkt. 231, arguing that there is no evidence Deem was ever exposed to a Powell product; there is no expert testimony that Deem's exposure to a Powell product caused his disease. Powell's pre-appeal motion also asserts that Deem's wrongful death claim accrued before he died and is therefore time-barred. The Ninth Circuit's Opinion rejected this latter argument, and Powell's summary judgment motion based on it is **DENIED**.

• Plaintiff Deem's Motion for Partial Summary Judgment on JCI's affirmative defenses, Dkt. 245. Deem argues there is no evidence supporting JCI's contributory negligence, assumption of risk, sophisticated intermediary, intervening or superseding cause, and government or military contractor affirmative defenses.

• Deem's substantially similar Motion for Partial Summary Judgment on Powell's substantially similar affirmative defenses, Dkt. 249.

After the Ninth Circuit's Opinion, Deem renewed his Motion for Leave to file a Supplemental Brief on the causation standard under maritime law, Dkt. 377. *See* Dkt. 484 at 3. The Court granted the motion, Dkt. 489. Deem has done so, Dkt. 490. JCI, Powell, and Crosby filed responsive supplemental briefs, Dkts. 494, 496, and 497, respectively, and Deem replied, Dkt. 498. The primary issue remaining in the case is whether Deem has evidence supporting his maritime wrongful death claim against the remaining defendants.

The motions are addressed in turn.

## I.   BACKGROUND

Thomas Deem worked at PSNS from February 7, 1974, until February 22, 1981.[3] He began as an apprentice marine machinist in the outside machine shop. In February 1978, he completed the apprentice program and was promoted to machinist in "Shop 38." Deem continued as a marine machinist at PSNS until February 22, 1981, when he was transferred to the U.S. Navy's Trident Refit Facility in Bremerton, Washington. There is ample evidence that Deem worked with and around asbestos, and that breathing asbestos dust caused his mesothelioma.

Deem's case against each defendant relies on the testimony of two coworkers, David Wingo and Lawrence Foster, and on the expert opinions of Captain Arnold Moore and Doctors Holstein and Scaggs. *See* Dkts. 89, 90, 184, 304, and 310.

Wingo first met Deem when he started his marine machinist apprenticeship in July 1974. Deem was six months ahead of Wingo, but Wingo worked in the same areas as Deem throughout the apprentice program. The apprentice program lasted four years. Two

---

[3] Deem's factual assertions throughout this litigation have relied on the Declaration of attorney David Humen. This Declaration has been filed in multiple, substantially similar forms, each of which attaches as exhibits the depositions of fact witnesses Wingo and Foster, and the reports of expert witnesses Captain Moore and Doctors Holstein and/or Scaggs. Various iterations of Humen's Declaration have also included specific defendants' discovery responses. *See, e.g.*, Dkt. 298 (regarding Defendant Cleaver-Brooks).

As it relates to Deem's claims against the remaining defendants, the applicable Humen Declaration was filed at Dkts. 184 (re: Crosby's motion, Dkt. 153); 304 (re: JCI's motion, Dkt. 263); and 310 (re: Powell's motion, Dkt. 231). Additionally, Deem's response, Dkt. 87, to JCI's recently renewed 2019 summary judgment motion, Dkt. 72, relied on Foster's and Wingo's Declarations, Dkts. 89 and 90, respectively.

years of the apprentice program were spent in the shop, "which covered all the machine sections, plus we had a bench section where we rebuilt pumps and valves." Dkt. 184-1 at 43. The other two years were spent performing hands-on training aboard ships and submarines during overhauls. Both Wingo and Deem continued to work as marine machinists aboard ships after graduating from the apprentice program.

Wingo explained that a Marine Machinist "does everything that has to do with making ships or submarines go through the water." *Id.* Machinists were typically assigned to engine rooms, boiler rooms, and auxiliary spaces performing maintenance on valves, pumps, catapults, distilling plants, turbines, compressors, and steam traps. Wingo recalled working with Deem aboard Navy ships *Kitty Hawk*, *Constellation*, *Truxton*, *Bainbridge*, and *Enterprise* at PSNS. He testified that he remembered using asbestos gasket and packing material marked Anchor, Garlock and John Crane (JCI). Dkt. 304-1 at 48. This deposition testimony was consistent with his earlier declaration, Dkt. 89 at 3. Wingo did not identify Crosby or Powell products in his deposition.

Foster also worked with Deem at PSNS. Foster began working at PSNS in 1973 as a sheet metal shop helper, and he entered the marine machinist apprentice program soon after. Foster was in the same apprentice class as Deem and worked with Deem "maybe every other month or so during the apprenticeship." Foster asserted that approximately half the machinists' time was spent working with Shop 38 on ships, and half was spent working with Shop 31 in the shop. Foster and Deem worked exclusively out of Shop 38 and continued working on the same crew once they completed the apprentice program in 1977. Dkt. 184-1 at 121.

Foster explains that marine machinists were responsible for removing and repairing mechanical equipment onboard ships, including valves, pumps, air compressors, and turbines. They were typically assigned to the machinery spaces, "where the power of the ship comes from, where the turbines are at, generators and the main equipment for propulsion." *Id*. at 124. The machinery spaces were full of dust from all the various trades working on the different equipment. Foster similarly recalled working with Deem aboard *Kitty Hawk*, *Constellation*, *Bainbridge*, *Truxton*, and *Enterprise*. He also attests that he worked with "John Crane" (JCI) gasket material. Dkt. 304-1 at 158. This deposition testimony was consistent with his earlier declaration, Dkt. 90 at 3. Foster also testified that he worked with Crosby valves, but during his deposition he could not say what kind of valves he worked on; just "safety valves" on top of boilers. Dkt. 154-1 at 6.

Distilling plants, or evaporators, make fresh water out of salt water onboard ships. Machinists pulled the covers off distilling plants, repaired or replaced valves, and descaled the distilling plants. The distilling plants at PSNS were insulated because of condensation issues. Although Wingo was never present when the insulation was removed from distilling plants, the insulators never got all the insulation off. The machinist then had to disturb some of the remaining insulation residue, which created visible dust they breathed.

Machinists also had to remove old flange gaskets from the distilling plants using a scraper and wire brush. Removing old gaskets created visible dust in the air that the machinists breathed. Once the old gasket material was off, machinists manufactured new

gaskets. Cutting the new gasket material created "light dust flying, you know, coming off from it." Wingo Deposition, Dkt. 184-1 at 48.

Deem also relies on expert witness Captain Moore, whose March 28, 2019 report is found (among other places in the record) at Dkt. 184-1 at 2–38. Moore catalogues some of the ships Deem worked on and the products used on them.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to

1    establish the existence of a genuine issue of material fact, "the moving party is entitled to

2    judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

3         There is no requirement that the moving party negate elements of the non-

4    movant's case. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving

5    party has met its burden, the non-movant must then produce concrete evidence, without

6    relying merely on allegations in the pleadings, that there remain genuine factual issues.

7    *Anderson*, 477 U.S. at 248.

8    **B.    The Defendants' "Causation" Summary Judgment Motions**

9         Each remaining defendant's primary defense to Deem's claims is that there is no

10    evidence supporting his claim that his mesothelioma was caused by exposure to its

11    product. *See* Dkts. 72 and 263 (JCI), 153 (Crosby), and 231 (Powell).

12         The Court has previously articulated the applicable causation standard: Under

13    maritime law, Deem must show that he "was actually exposed to asbestos-containing

14    materials that [were] installed by [a defendant] and that such exposure was a substantial

15    contributing factor in causing his injuries." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d

16    1170, 1174 (9th Cir. 2016) (citing *Lindstrom v. A–C Prod. Liab. Tr.*, 424 F.3d 488, 492

17    (6th Cir. 2005)). "Absent direct evidence of causation, a party may satisfy the substantial-

18    factor test by demonstrating that the injured person had substantial exposure to the

19    relevant asbestos for a substantial period of time." *Id.* (citing *Lindstrom*, 424 F.3d at 492);

20    *see also Menne v. Celotex Corp.*, 861 F.2d 1453, 1462 (10th Cir. 1988) ("More

21    significant under traditional causation tests than the question of mere exposure to

22    [asbestos-containing] products is whether the exposure was sufficiently sustained (or

1    frequent) and intense to constitute a proximate cause of [the plaintiff's] mesothelioma.").

2    "Evidence of only minimal exposure to asbestos is insufficient; there must be 'a high

3    enough level of exposure that an inference that the asbestos was a substantial factor in the

4    injury is more than conjectural.'" *McIndoe*, 817 F.3d at 1176 (quoting *Lindstrom*, 424

5    F.3d at 492). *See* Orders at Dkt. 408 at 9–10 and Dkt. 455 at 8–9.

6         Deem's supplemental brief on this issue, Dkt. 490, emphasizes that expert

7    testimony is not required to raise a fact issue on causation at summary judgment. *Id*. at 4

8    (citing *Lindstrom*, 424 F.3d at 498). It also correctly articulates how the substantial factor

9    causation test is applied:

10        The substantial factor causation analysis under maritime law is consistent
          with the *Lohrmann* "frequency, regularity, and proximity" test. *Bantin v.*
11        *Air & Liquid Sys. Corp.*, No. 1:20-CV-00341-MR-WCM, 2022 WL
          2334993, at *5 (W.D.N.C. June 28, 2022) (citing *Lohrmann v. Pittsburgh*
12        *Corning Corp*., 782 F.2d 1156, 1163 (4th Cir. 1986)). Under *Lohrmann*, the
          plaintiff must present some "evidence of exposure to a specific product on a
13        regular basis over some extended period of time in proximity to where the
          plaintiff actually worked." *Lohrmann*, 782 F.2d at 1162–63. The concern
14        behind the test, also consistent with maritime law, is that the plaintiff show
          "more than a casual or minimum contact with the product" to hold the
15        defendant liable. *Jones v. Owens-Corning Fiberglas Corp. & Amchem*
          *Prod*., 69 F.3d 712, 716 (4th Cir. 1995) (quoting *Lohrmann*, 782 F.2d at
16        1162). The Fourth Circuit has called this a *de minimis* rule. *Lohrmann*, 782
          F.2d at 1162.

17   Dkt. 490 at 4.

18        The parties largely agree on the applicable standard and the Court agrees that it is

19   well-established. The defendants' dispositive motions based on this standard are

20   addressed in turn.

21

22

1

**1.     JCI's summary judgment motions**

2

     JCI similarly argues that that there is no evidence that Deem ever inhaled asbestos

3

from its products, and that as a matter of law he cannot establish that JCI asbestos was a

4

substantial factor in his mesothelioma. Dkts. 72 and 263. Like Crosby, JCI acknowledges

5

that Wingo (and Foster) signed declarations early in the case asserting they recalled using

6

"John Crane" asbestos gasket products at PSNS. At his 2019 deposition, Wingo testified

7

that he recalled working with JCIgasket material. Dkt. 184-1 at 48. Wingo could not,

8

however, place Deem in the vicinity of any JCI products. Dkt. 263 at 6 (citing Wingo

9

Deposition excerpts, Dkt. 264 at 9). Foster similarly could not recall ever seeing Deem

10

work on or with JCI packing or gaskets. *Id*. at 7 (citing Foster Deposition excerpts, Dkt.

11

264 at 14).

12

     Deem's responses to JCI's summary judgment motions, Dkts. 87 and 303, are

13

similar to his response to Crosby's (and Powell's) similar motions. Deem does not

14

address the Wingo and Foster depositions referenced above. He instead focuses on the

15

overwhelming and undisputed evidence that, like Wingo and Foster, Deem worked in an

16

environment filled with dangerous asbestos dust. Dkt. 303 at 4–7. He relies on JCI's

17

corporate representative's testimony that JCI sold asbestos packing and gasket material to

18

the U.S. Navy, and on Captain Moore's expert testimony that JCI packing material was

19

used at PSNS and specifically on the ships *Constellation* and *Enterprise*, upon which

20

Deem worked at PSNS. *Id*. at 7–8 (citing Moore Report, Dkt. 304-1).

21

     Deem also argues that, in mesothelioma cases, circumstantial evidence that a

22

plaintiff worked in the vicinity of a defendant's product may suffice to establish that the

1    product was a substantial factor in causing the plaintiff's disease. Dkt. 303 at 16 (citing *In*

2    *re Hawaii Fed. Asbestos Cases*, 734 F. Supp. 1563, 1572 (D. Haw. 1990)).

3         But as the Court has previously held, the case on which Deem relies for this

4    argument was decided under Hawaii law, not maritime law. The rule applied there—that

5    "plaintiffs need not show that a particular plaintiff was working with a particular

6    defendant's product on a certain ship; rather, 'the presence [of the product at the

7    shipyard] is enough,'" *In re Hawaii Fed. Asbestos Cases*, 734 F. Supp. at 1572, is

8    inconsistent with the 2016 *McIndoe* maritime substantial factor standard described above.

9    In the absence of direct evidence of exposure, a plaintiff may satisfy the substantial factor

10   test by demonstrating that he had "substantial exposure to the relevant asbestos for a

11   substantial period of time." *McIndoe*, 817 F.3d at 1174.

12        Indeed, this Court has previously granted summary judgment where the facts

13   supporting Deem's claim against a manufacturer were largely the same as those

14   supporting Deem's claim against JCI. *See* Dkts. 408 (dismissing Deem's claims against

15   Cleaver Brooks) and 455 (dismissing Deem's claims against defendants Foster Wheeler,

16   Warren Pumps, and Air & Liquid Systems). The Court also rejected Captain Moore's

17   expert opinions as speculative.

18        There is no evidence from which a reasonable jury could find that Deem had

19   substantial exposure to JCI asbestos for a substantial period of time. JCI's motions for

20   summary judgment on that point, Dkts. 72 and 263, are therefore **GRANTED**, and

21   Deem's maritime wrongful death claim against JCI is **DISMISSED** with prejudice.

22

Deem's summary judgment motion on JCI's affirmative defenses, Dkt. 245, is **DENIED** as moot.

### 2. Crosby's summary judgment motion

Crosby argues that there is no evidence that Deem ever inhaled asbestos from its products, and that as a matter of law he cannot establish that Crosby asbestos was a substantial factor in his mesothelioma. Dkt. 153. It acknowledges that Wingo's Declaration, Dkt. 90 at 3, attests that he "saw Deem inhale dust from the removal and replacement of asbestos containing gaskets, packing and insulation associated with valves manufactured by Crosby," but emphasizes that, at his deposition, Wingo could not state whether he (Wingo) ever worked on a Crosby valve, or not; he worked on safety valves on top of boilers. Dkt. 153 at 2 (citing Wingo Deposition excerpts, Dkt. 154-1 at 6). Deem's medical expert similarly could not tie his mesothelioma to asbestos from a Crosby product. Dkt. 153 at 4.

Deem's response relies heavily on the amount of asbestos dust where Deem worked—he maintained valves on a daily basis, scraping old, asbestos-containing gaskets, packing, and insulation, and replacing them with new ones. Dkt. 183 at 4–6. But Deem provides no direct evidence supporting the conclusion that he was actually exposed to asbestos from a Crosby product, or that Crosby asbestos was a substantial factor in his disease. Deem emphasizes that direct evidence in not necessarily required, and that circumstantial evidence may be enough to defeat summary judgment. Dkt. 183 at 16–17 (citing *Cabasug v. Crane Co.*, 989 F. Supp. 2d 1027, 1037 (2013); *Nelson v. Air & Liquid Sys. Corp.*, No. 14-cv-0162 JLR, 2014 WL 6982476 (W.D. Wash. Dec. 9, 2014)). Deem

1  argues that in *Nelson*, the court denied summary judgment because the evidence

2  supported the conclusion that the plaintiff had worked with and around the defendant's

3  asbestos-containing valves and equipment. *Id*.

4        Deem argues that Crosby has been selling asbestos-containing valves[4] to the Navy

5  since the 1930s, and that Crosby valves require insulation and gaskets, which also used

6  asbestos. Dkt. 183 at 7–8. But there is no connection between that fact and Deem's

7  disease. This is the same lack of evidence that led the Court to grant other defendants'

8  similar summary judgment motions. Dkts. 408 and 455.

9        Neither Deem's fact witnesses nor his experts can place a Crosby valve in any

10  place that Deem worked at the PSNS. Absent any evidence that Deem was exposed to

11  Crosby's asbestos, Crosby's motion for summary judgment is **GRANTED**, and Deem's

12  maritime wrongful death claim against Crosby is **DISMISSED** with prejudice.

13        **3.      Powell's summary judgment motion**

14        Powell similarly argues that that there is no evidence that Deem was ever in the

15  vicinity of work performed on a Powell product, and there is no fact or expert testimony

16  that could support a jury finding that Powell's asbestos was a substantial factor in Deem's

17  mesothelioma. Dkt. 231. Fact witnesses Wingo and Foster did not testify that they

18  worked with or around Powell valves at the PSNS. *See* Dkts. 89 and 90, and deposition

19  excerpts at Dkt. 310, Exs. 2 and 3. As Powell points out, Captain Moore was unable to

20

21

22        [4] Crosby denies that the valves it sold to the Navy after 1931 contained asbestos, and that
the valves it built and sold could be insulated. Dkt. 189 at 3–4.

1  place Deem in the vicinity of Powell valves (and asbestos), even though he can place

2  Powell valves on the *Enterprise*.

3       Deem's Response to Powell's motion, Dkt. 309, repeats its claims about the

4  prevalence and danger of asbestos aboard ships at PSNS while Deem worked there,

5  including the *Enterprise*. But it concedes there is no direct evidence that Deem was

6  exposed to Powell's asbestos, and in support of its claim that there is sufficient

7  circumstantial evidence of such exposure relies on *In re Hawaii Fed. Asbestos Cases*,

8  which is not persuasive for the reasons discussed above.

9       There is no evidence from which a reasonable jury could find that Deem had

10  substantial exposure to Powell asbestos for a substantial period of time. Powell's motion

11  for summary judgment, Dkt. 231, is therefore **GRANTED**, and Deem's maritime

12  wrongful death claim against Powell is **DISMISSED with prejudice**.

13       Deem's summary judgment motion on Powell's affirmative defenses, Dkt. 249, is

14  **DENIED** as moot.

15                        \* \* \*

16       Defendants JCI, Crosby, and Powell's Motions for Summary Judgment, Dkts. 72

17  and 263, 153, and 231, respectively, are **GRANTED** and Deem's remaining maritime

18  wrongful death claims against those defendants are **DISMISSED with prejudice**.

19  Defendants' Motions to Dismiss on the limitations period, Dkts. 371, 372, and 374, are

20  **DENIED**. The remainder of JCI's Motion to Dismiss, Dkt. 372, is **DENIED** as moot.

21  Deem's Motions for Summary Judgment on Defendants' affirmative defenses, Dkts. 245

22  and 249, are **DENIED** as moot.

The Clerk shall enter a judgment and close the case.

IT IS SO ORDERED.

Dated this 9th day of March, 2023.

BENJAMIN H. SETTLE
United States District Judge